IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| SALAHUDDIN SMART,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS CAPELLI, et al.,<br><br>Defendants. | HON. JEROME B. SIMANDLE<br><br>CIVIL NO. 07-955<br><br>**MEMORANDUM OPINION** |
|---|---|

**Simandle, District Judge:**

1. This matter is before the Court on a motion for summary judgment [Docket Item 23] pursuant to Fed. R. Civ. P. 56 filed by Defendants Louis Capelli, L. Evans, Jr., and John Smith; and a motion for summary judgment by Plaintiff *pro se* Salahuddin Smart [Docket Item 22].

2. As an initial matter, the Court must deny Plaintiff's motion for summary judgment for failure to provide evidence in support of the motion and to comply with the Local Rules. Plaintiff does not include a statement of undisputed material facts as required by Local Civil Rule 56.1, citations to the record, or any evidentiary support, including affidavits, depositions, interrogatories, answers, documents or admissions. See L. Civ. R. 56.1. Accordingly, the Court cannot find that he has met his burden of showing that he is entitled to judgment on the issues he raises in his motion. See Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). The Court shall deny Plaintiff's motion for summary judgment. Plaintiff has filed a separate opposition to Defendants' motion, which the Court shall consider below.

3. Also pending before the Court is a motion to compel responses to interrogatories, filed by Plaintiff [Docket Item 18]. Pursuant to Fed. R. Civ. P. 33(a)(1), "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." It appears that Plaintiff initially served the permitted 25 interrogatories on Defendants and that they responded on September 14, 2007. It also appears that on or around July 3, 2007, Plaintiff served an additional 17 sets of interrogatories, with 25 questions each, on each defendant. On July 26, 2007, Defendants returned the additional 17 sets of interrogatories to Plaintiff, noting that the additional interrogatories were objected to on the basis that they exceeded the number of interrogatories permitted by Federal Rule of Civil Procedure 33(a). See (Ex. A to Def. Br. Opp. Mot. to Compel.) In total then, Plaintiff served 450 interrogatories on each Defendant. Plaintiff did not attempt to narrow his requests or seek leave of Court, pursuant to Fed. R. Civ. P. 33 (a)(1) and 26(b)(2), to serve additional interrogatories on Defendants.

Accordingly, the motion to compel responses to the additional 425 interrogatories per defendant shall be denied.

4. The Court turns now to Defendants' motion for summary judgment, which Plaintiff opposes. Plaintiff filed this action on February 28, 2007 alleging that Defendants violated his rights under the Fourth Amendment. Liberally construed, the Complaint states a claim under 42 U.S.C. § 1983 for violations of constitutional rights including unlawful seizure, false arrest, and filing false charges. Defendants Sgt. Louis Capelli; Officer Larry Evans, Jr.; and Officer John Smith ("Defendants") are police officers employed by the Rutgers University Police Department, Camden Campus.

5. Summary judgment is appropriate when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[t]he nonmoving party's evidence 'is to

be believed, and all justified inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999)(quoting Liberty Lobby, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995)(citations omitted). The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp., 477 U.S. at 323. However, the non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e).

6. Defendants move for summary judgment arguing that undisputed material facts show they had probable cause to arrest and charge Plaintiff and that, even if they did not actually have probable cause, Defendants are entitled to qualified immunity for believing that they did. Plaintiff opposes, arguing that material facts are in dispute, that his arrest was not supported by probable cause, and that Defendants are not entitled to qualified immunity.

7. The following facts are not in dispute. Plaintiff was not a student at Rutgers University or Camden County College at

the time of these incidents. On February 5, 2005, Camden County Security Officer Lynch observed Plaintiff in a computer room open only to students and faculty of Camden County College. Officers from the Rutgers Police Department were dispatched to assist the Camden County Security officers in removing Plaintiff from that room. Rutgers police officers Larry Evans, Jr. (a defendant in this matter) and Triplett-Ross came to the Camden County College campus to assist in determining whether Plaintiff was authorized to be in the computer lab. The officers apparently asked Plaintiff for identification, which he produced, and Plaintiff admitted that he was not a student of any of the universities in the area. The officers therefore escorted Plaintiff from the Camden County College campus and informed him that he was not welcome there and would be arrested for trespass if he returned. There is no evidence that Plaintiff returned to that campus.

8. The remaining facts relate to incidents on the Camden campus of Rutgers University ("Rutgers Camden"), a separate institution. On February 23, 2005, Katrina Hall, an employee of the law school library at Rutgers Camden, informed campus police that a female law student told her a black male was in the law school library with a baby stroller and that he was placing books in the bottom of the stroller. (Ex. E to Kahn Cert.)[1] Ms. Hall

---

[1] Defendants indicate that this notice appears outside the first floor lobby to the Rutgers Camden law school library:

called the Rutgers Camden police and the police dispatcher put out a call to the other officers of a suspected theft of books.[2] Officer Luis Rivera, a security officer for Rutgers Camden, submitted an affidavit indicating that he heard the police dispatch call, that he had observed an individual fitting that description leaving campus about twenty minutes earlier, and that he had seen him around campus in the past.

9. Several days later, on March 1, 2005, a black male with a baby stroller, later identified as Plaintiff, entered the Rutgers Camden Law School building at approximately 5:00 p.m. Officer Rivera had seen him approaching campus and had called

---

> Only students, faculty, staff or alumni of Rutgers University may enter this building. All visitors must show identification. Unauthorized soliciting is not allowed. Violators are subject to arrest for trespassing.
>
> Rutgers University Police Department.

Plaintiff admits this notice is placed in that location. However, the evidence indicates that the law library is open to the public but that identification is required for entry, and Defendants appear to concede as much (Def. Br. at 21). The undisputed facts show that Plaintiff was asked for identification when he entered the law library, that he showed a driver's license, and that he was then was permitted to enter.

[2] Ms. Hall submitted an affidavit indicating that books placed that low to the ground might be able to avoid triggering the law library's theft deterrent sensors. However, she was not able to determine that books were actually stolen and did not report any books stolen. The police report on the incident noted that "Ms. Hall was unable at this time to determine whether or not anything was taken." (Ex. E to Kahn Cert.)

police dispatch to indicate that the individual suspected of stealing library books was walking towards the Rutgers Camden Law School.  Officer Williams heard the police dispatch call and had seen Plaintiff enter the law school.  Within minutes, Defendants Sergeant Capelli, Officer Smith and Officer Evans arrived at the law school and spoke with Security Officer Williams.  Officers Smith and Evans took the elevator to the third floor lobby of the law library to locate Plaintiff.

10.  Officer Evans located Plaintiff and an infant in a baby carriage in the law school library and he directed Plaintiff to gather his things and to come with the officers to the lobby of the building.  Plaintiff refused to show the officers his identification but went down to the first floor of the law school.  Katrina Hall was asked to come to the law school lobby to identify Plaintiff as the person suspected of stealing library books.

11.  At this point, the facts are in dispute.  Defendants claim that they asked Plaintiff for his identification and his address and that he refused, became loud, belligerent and uncooperative.  Plaintiff alleges that he was not loud or uncooperative, but admits that he did not provide the requested information because he believed it was his legal right to walk away and also believed that the officers had no right to demand he produce physical proof of his identification.

12. It is undisputed that Defendants then asked Plaintiff to leave the premises and that Plaintiff exited the building and placed a call to 9-1-1 to report that he was being harassed by the Rutgers Camden officers. Defendants claim that Plaintiff thrust his cellphone in Sergeant Capelli's face and that Plaintiff's child was not properly attired for the cold weather. Plaintiff denies those allegations.

13. Sergeant Capelli then handcuffed Plaintiff and put him in a patrol vehicle. Defendants claim that Plaintiff was uncooperative during this arrest, which he denies. Plaintiff was then transported to the Rutgers Camden Police headquarters[3] where he was charged with disorderly conduct and defiant trespass. After processing, he was permitted to leave.

14. The Third Circuit case of Orsatti provides a concise overview of the law governing this action for arrest without probable cause:

> Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972). Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. See United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984). Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's

[3] The child was also transported to police headquarters, where she was released to her mother.

> knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)). When a police officer does arrest a person without probable cause, the officer may be liable in a civil rights suit for damages. Pierson v. Ray, 386 U.S. 547 (1967).
>
> Nevertheless, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). [. . .] Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993), the district court should resolve any immunity question at the earliest possible stage of the litigation. Creighton, 483 U.S. at 646 n.6. When the material facts are not in dispute, the district court may decide whether a government official is shielded by qualified immunity as a matter of law. Id.

Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Thus, "the qualified immunity doctrine 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 484 (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)).

15. Further, to the extent Plaintiff alleges false imprisonment, that claim also requires a lack of probable cause.

> A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment

> protection against deprivations of liberty without due process of law. Baker v. McCollan, 443 U.S. 137, 142 (1979). The Court in Baker made it clear an arrest based on probable cause could not become the source of a claim for false imprisonment. Id. at 143-44. On the other hand, where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988). A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures. Barna v. City of Perth Amboy, 42 F.3d 809, 820 (3d Cir. 1994); Guenther v. Holmgreen, 738 F.2d 879, 883 (7th Cir. 1984), cert. denied, 469 U.S. 1212 (1985); Weber v. Village of Hanover Park, 768 F. Supp. 630, 634-36 (N.D. Ill. 1991).

Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)

16. If there is no dispute that Defendants had probable cause to arrest Plaintiff, even if not for the specific crime with which he was charged, then Defendants will be entitled to summary judgment. "As long as the officers had some reasonable basis to believe [Mr. Smart] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).

17. As for qualified immunity,

> Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

> constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has set forth a two-step objective reasonableness test to determine whether qualified immunity should be granted. Saucier v. Katz, 533 U.S. 194, 200-01 (2001); see also Kopec, 361 F.3d at 776. "First, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." Kopec, 361 F.3d at 776 (citing Saucier, 533 U.S. at 201). If "'a violation could be made out on a favorable view of the parties' submissions,'" the court must determine "'whether the right was clearly established.'" Id. (quoting Saucier, 533 U.S. at 201). "'The relevant dispositive inquiry' in making this determination is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202).

Barton v. Curtis, 497 F.3d 331, 335 (3d Cir. 2007). The right to be free from arrest without probable cause is clearly established so that if the Court finds a reasonable jury could find Defendants violated that right, the Court would have to deny qualified immunity on this summary judgment motion. On the other hand, if there was no constitutional violation, then Defendants retain their qualified immunity.

18. First, the Court finds that Defendants lacked probable cause to arrest Plaintiff for stealing law library books. Although he had been reported as a suspicious person, there was no accusation that any books were stolen by him or anyone else. The undisputed facts indicate the officers were told to suspect

him of stealing books, but that suspicion did not rise to the level of probable cause or justify, even on Defendants' version of the facts, arresting Plaintiff on March 1, 2005.

19. The Court looks next at the other potential offenses that could have been charged under the circumstances. Plaintiff testified that when asked for his identification he directed the officers to the sign-in sheet, that he became unnerved when Defendants began surrounding him in the lobby, that they implied he was accused of stealing laptop computers, and that he decided to leave the law school building. (Smart Dep. at 66-69, Ex. A to Kahn Cert.) On Plaintiff's version of facts, he did not raise his voice or act disorderly, nor did he resist arrest or remain in the building without license. (Id.) Plaintiff testified he left the law school library building and, according to him, Defendants followed him and taunted him by threatening to call DYFS for his alleged failure to care for his child (id. at 68-69) before arresting him. On Plaintiff's version of the facts, Defendants arrested Plaintiff for no reason at all.[4]

[4] Although "[t]he Fourth Amendment is not violated when state law requires a suspect to reveal his/her name to a police officer during a *Terry* stop" and, if state law provides, "the suspect may be arrested for failure to provide [identification]," so long as "such identification is 'reasonably related' to the reason for the stop, United States v. Cummings, 400 F. Supp. 2d 822, 829 (W.D. Pa. 2005), in this case, Defendants do not point to any New Jersey law that permits arrests for failure to identify oneself and instead base their qualified immunity argument on the disorderly conduct and defiant trespass statutes. Thus, although New Jersey could enact a constitutional mandatory

20. Plaintiff was charged with disorderly conduct in violation of N.J. Stat. Ann. § 2C:33-2a, which provides:

> A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he
>
> (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or
>
> (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.

Viewing the facts in the light most favorable to Plaintiff, who claims that he left the library when requested and did not behave belligerently, the officers could not have reasonably believed that there was probable cause to arrest him for disorderly misconduct.

21. The Court turns next to the charge of defiant trespass to determine whether the officers had probable cause to arrest, detain, and charge Plaintiff on their alleged belief that he had violated that statute. N.J. Stat. Ann. § 2C:18-3(b) provides:

> A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in

---

identification statute, see Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 188 (2004) (upholding Nevada identification statute that required suspect to give his name but not driver's license or any other document), Defendants are not entitled to qualified immunity where none exists and, even on their version, they arrested Plaintiff for reasons other than his refusal to identify himself. Put simply, the facts are in dispute as to whether Plaintiff was behaving in a disorderly manner.

> any place as to which notice against trespass is given by:
>
> (1) Actual communication to the actor; or
>
> (2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
>
> (3) Fencing or other enclosure manifestly designed to exclude intruders.

While a reasonable jury could find that the officers believed Plaintiff was trespassing, it would not be compelled to so find as there is a material dispute of fact on that issue. It is clear on the evidence before the Court that Plaintiff entered the law school library upon showing the required identification and that he signed in when he entered, as requested by the security guard. The officers ordered Plaintiff to the lobby of the building prior to demanding that Plaintiff display his identification again. It is also clear that Plaintiff complied with the request to go down to the lobby and, on his version of facts, ultimately to leave the building. Viewing the evidence in the light most favorable to Plaintiff, the officers would have known his name, that he was licensed to be in the building and that he left when requested to do so. Thus, a reasonable jury could find Defendants had no probable cause for arresting him for trespass and no good faith belief that they did. Accordingly, viewing the facts in the light most favorable to Plaintiff, the

defiant trespass charge was not a charge for which they reasonably believed they had probable cause.

22. Defendants allege, as justification for their decision to question Plaintiff and bring him to the lobby, that they suspected him of stealing books. But it is the arrest of which Defendant complains, not an investigatory stop. See Terry v. Ohio, 392 U.S. 1 (1968). If a jury believes that Plaintiff became as belligerent as Defendants indicate he did, then they could find for Defendants. But the Court cannot resolve these disputes of fact at this stage. Accordingly the Court cannot grant summary judgment to Defendants.[5]

23. Nor can the Court determine at this stage whether the officers are entitled to qualified immunity. There are material disputes of fact as to what occurred between Defendants and Plaintiff inside and outside the law school library. Although the Court may determine qualified immunity issues when facts are not in dispute as to what the Defendants knew, in this case, there are too many contradictions in the record for the Court to resolve the matter on summary judgment. Further, if a jury believes Plaintiff's version of events, Defendants arrested him

[5] Although Plaintiff was also subsequently charged with resisting arrest and obstructing justice, because those charges relate to alleged conduct during the arrest, it could not have provided probable cause for the arrest. See Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995) ("the resisting arrest charge could not have provided probable cause for the arrest *ab initio*").

for no reason at all, and, in that case, there would be no possibility that they made a reasonable mistake of law.

24. For the reasons explained above, the Court must deny the motions for summary judgment of both parties as well as Plaintiff's motion to compel. An appropriate order shall be entered.

| **June 18, 2008** | **s/ Jerome B. Simandle** |
|---|---|
| Date | JEROME B. SIMANDLE<br>U.S. District Judge |